## Thomas Tustin, Appellee, v. Majestic Coal & Coke Company, Appellant.

1. MINES AND MINERS—*assumed risk.* A shot firer in a coal mine, who fails in his duty or makes a mistake in judgment in the performance of such duty, in examining shots in order to determine whether or not they are prepared in a practical and workmanlike manner, and is injured in consequence, will be held to have been injured by the ordinary risks and hazards of his employment which he assumes.

2. MINES AND MINERS—*assumed risk.* Where a pillar in a coal mine was permitted to slant and become thin and such fact is apparent, the doctrine of assumed risk applies where a shot firer is injured by the explosion of a blast of powder, intended for the purpose of making a cross cut.

Appeal from the City Court of DuQuoin; the Hon. BENJAMIN W. POPE, Judge, presiding. Heard in this court at the October term, 1912. Reversed with statement of facts. Opinion filed March 10, 1913.

C. E. POPE, for appellant.

GEORGE W. DOWELL and M. C. COOK, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellee brought this suit to recover damages for personal injuries received by him, while employed in the mine of appellant. The two counts of the declaration, charged appellant with negligence in permitting the pillar of coal between rooms four and five driven off of the sixth north entry of the main west entry of appellant's mine, to become so thin as to endanger the safety of appellee, who was a shot firer in said mine; that by reason of such negligence on the part of appellant, appellee, while in the exercise of his duty as a shot firer, was injured by the explosion of a blast of powder, which broke through the wall between the two rooms, throwing coal against him and knocking him down.

There was a verdict in favor of appellee for $400, followed by a judgment for a like amount.

The following facts appeared from the proofs on the trial: Appellant, on December 29, 1911, was operating a coal mine near DuQuoin, Illinois, in which appellee had been employed for some time as a shot firer and was earning at this work about $6.00 a day. Rooms four and five, which extended west from the sixth north entry, had at this time been driven in about 230 feet. The pillar of coal between the rooms was intended to average about 22 feet in thickness. The line of this pillar was practically straight in room five but in room four, which was located south of room five, it slanted or turned towards the north, lessening the distance between the two rooms to such an extent that near the face, the pillar was but seven feet thick. What was known as sight lines or sight wires, were used in this mine to run the rooms straight and keep the pillars between them of uniform thickness. These lines were properly placed by means of a compass and could be sighted along by the miner extending the room for his assistance or by others who had occasion to do so. The slant or bend in room No. 4 however, was so great that it could be discovered without the aid of sight lines. There were two cross cuts through the pillar, connecting the two rooms and from the last cross cut to the face of the coal in room 4 it was 66 feet, while in room 3 it was 65 feet. The rooms had therefore reached a point where the law required another cross cut between them and the mine manager had instructed the miner in room No. 4 to make one several days before appellee was injured.

On the day of the injury two shots had been placed in the pillar in room 5 and opposite one of them, which was near the face, a slant shot was also placed in the pillar in room No. 4. Had the drill holes for these shots continued a little further, they would have met forming lines shaped somewhat like the letter V, but as it was, the bottom of the two holes were 15 inches

apart. The miner in room 4, while testifying that he had been told to put in a cross cut, stated in answer to the question, what the shot in the rib was for, that, "it was just for to make coal."

There was some evidence that it was the custom in that mine for the mine manager or some one else in authority, to cause conspicuous chalk marks to be placed at a point where a cross cut was to be made. No such marks had been made at the place where appellee was injured. The object of these chalk marks appeared to be simply to indicate to the men at work in the rooms where the cross cut should be made and not as a warning of danger. On the day of the injury appellee and his assistant Hartley, proceeded to examine all the shots they were to fire, to determine whether or not they were prepared in a practical workmanlike manner and after the miners had left, they commenced firing the shots. In the course of their work they entered room 5 and each lighted one of the shots placed there. It was their intention to next fire the shots in room 4 and for that purpose, they went to the nearest cross cut to cross over to that room. When appellee had reached the shot on the rib, or pillar, in room 4 and was preparing to fire it and while Hartley was in the cross cut, the shot in room 5 opposite the one in room 4, where appellee was at work, exploded, blowing through the wall of coal and igniting the shot in room 4, thereby causing it to explode. As a result of these explosions, appellee was knocked down and received the injuries of which he complained.

While a number of reasons are insisted upon by appellant for the reversal of the judgment in this case, it is necessary for us to consider only those which relate to the facts. It was the duty of appellee and his associate, under the statute, to examine shots before they were fired and ascertain whether they had been prepared in a practical workmanlike manner. There was some conflict in the evidence as to whether the shot in room 5, which broke through the wall was a practical shot, but whether it was or not, was a question

which the law made it the duty of appellee, who says he examined and fired it, to decide. If appellee failed in his duty or made a mistake in judgment, appellant could not be charged with negligence towards him resulting therefrom. But appellee relies upon the alleged negligence of appellant in permitting room 4 to be turned out of the straight line towards the north and thereby causing the pillar of coal between the two rooms to become thinner than it otherwise would have been. It appears from the proofs, however, that the fact that the room turned to the north, was plainly apparent to those who entered it and went towards the face and that appellee, in the ordinary course of events, must have known it. The proof also shows that the blasts in question were located at a point where a cross cut should have been, and was in fact ordered to be made; also that the shots were placed in the rib in the manner in which shots should be located for the purpose of making a cross cut. This should have indicated to a man of experience like appellee, who testified that he had worked in mines for twenty-one years, that the shots were intended to blow out the coal from the pillar for the purpose of making a cross cut.

The facts in the case, as disclosed by the proofs, fail to show any negligence on the part of appellant, which tended to bring about the injuries to appellee. But on the contrary the proofs show that he was injured in the ordinary course of his work by one of the risks or hazards of his occupation, which he must be presumed to have assumed. The judgment of the court below will therefore be reversed.

*Judgment reversed with statement of facts.*

Statement of facts to be incorporated in the judgment: We hold as facts in this case that appellant was not guilty of negligence tending to cause the injuries complained of by appellee; also that his injuries were occasioned by one of the ordinary risks or hazards of his employment, which he must be held to have assumed.